# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

# CENTRAL DIVISION

| | |
|---|---|
| GREG ANDERSON,<br><br>        Plaintiff,<br><br>v.<br><br>GARY HERBERT, SEAN REYES, the THIRD DISTRICT COURT, the EIGHTH DISTRICT COURT, the UTAH COURT OF APPEALS, CLARK A. McCLELLAN in both his individual and official capacity, DANIEL KITCHEN, JAMES L. AHLSTROM, TERRY WELCH, LYNN KITCHEN, GARY KITCHEN, MATTHEW J. KITCHEN, MARK R. KITCHEN, SAND BAY LLC, SUN LAKE LLC, ORCHID BEACH LLC, and ROOSEVELT HILLS LLC,<br><br>        Defendants. | **ORDER ADOPTING REPORT AND RECOMMENDATION**<br><br>Case No. 2:15-cv-00083-RJS-DBP<br><br>Judge Robert J. Shelby<br>Magistrate Judge Dustin B. Pead |

      In 2008, a state court entered an Eviction Order against Plaintiff Greg Anderson. Believing the Order improper, Anderson subsequently filed various state and federal lawsuits collaterally attacking it, culminating in the filing of this case. Defendants moved to dismiss Anderson's Consolidated Complaint, and Magistrate Judge Pead issued a Report and Recommendation recommending their motions be granted. Anderson objected. For the reasons below, the Objection is overruled and the Report and Recommendation is adopted in full.

# ANALYSIS

      Judge Pead recommended dismissal of the Consolidated Complaint against all Defendants on the basis of lack of jurisdiction under the *Rooker–Feldman* doctrine, and alternatively recommended dismissal on various other grounds. The court first addresses

Anderson's objections to the *Rooker–Feldman* analysis, and then turns to the objections to Judge Pead's alternative rulings.[1]

## The *Rooker–Feldman* Doctrine

Judge Pead first recommended dismissing the case under the *Rooker–Feldman* doctrine, which limits a federal district court's jurisdiction to review a dispute already resolved by a state court.[2] The doctrine bars review not only of claims actually raised before the state court, but also of matters not raised before the state court but "inextricably intertwined" with the state court's denial of the plaintiff's claims, the justification being that in either case, the district court is "in essence being called upon to review the state-court decision."[3] The question before Judge Pead, then, was whether the claims in Anderson's Consolidated Complaint were the same as or inextricably intertwined with those raised in Anderson's previous state court lawsuits.

The prior state court actions at issue stem from an Eviction Order entered against Anderson in 2008. After being evicted, Anderson filed five subsequent state and federal lawsuits collaterally attacking the Eviction Order, the fourth and fifth of which were filed in this court and later consolidated into the present case. In his Consolidated Complaint, Anderson asserts twenty-eight claims—twelve federal claims and sixteen state law claims. Judge Pead concluded the thrust of all these claims was to overturn the Eviction Order, and determined the *Rooker–Feldman* doctrine therefore barred review by this court. Anderson objected to this conclusion,

---

[1] All facts are taken from Anderson's Consolidated Complaint and are construed in the light most favorable to him. *See Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996). The court presumes Anderson's factual allegations to be true and liberally construes his pro se pleadings. *Id.* Where, as here, a magistrate judge has issued a Report and Recommendation, the court will review de novo any parts of the Report and Recommendation that were properly objected to. Fed. R. Civ. P. 72(b). Any part not objected to will be reviewed for clear error. *Summers v. State of Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991) ("In the absence of timely objection, the district court may review a magistrate's report under any standard it deems appropriate.").

[2] *See Guttman v. Khalsa*, 446 F.3d 1027, 1031 (10th Cir. 2006).

[3] *Id.*

2

contending: (1) the *Rooker–Feldman* doctrine does not apply because this case was filed before all of his state court cases went final; and (2) the doctrine does not apply to allegations of misrepresentations in state court.

The first objection is overruled. Anderson is correct that Tenth Circuit law has evolved on this point; previously, the Tenth Circuit stated *Rooker–Feldman* barred a federal suit regardless of whether it was filed before or after the related state court action went final.[4] The Supreme Court reversed that holding in *Exxon Mobil*, confining *Rooker–Feldman* to cases in which the state court judgments in question went final before federal district court proceedings were initiated.[5] The reason for this limitation is that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court"; rather, the practice to be avoided is "district courts exercise[ing] appellate jurisdiction over state-court judgments."[6]

This case presents a unique situation in that the original Complaint (in what was Anderson's fourth lawsuit) was filed before all Anderson's state proceedings went final, but both the fifth lawsuit and the subsequent Consolidated Complaint were filed after Anderson's state proceedings went final. The Tenth Circuit has not provided guidance on application of *Rooker–Feldman* in this instance, but given the strict post-*Exxon Mobil* interpretation of *Rooker–Feldman* and the likelihood that this case, for purposes of *Rooker–Feldman*, should be considered "filed" before Anderson's state proceedings went final (notwithstanding that the fifth lawsuit and operative Consolidated Complaint came afterward), it might seem that the court could properly assert jurisdiction.

---

[4] *See Kenmen Eng'g v. City of Union*, 314 F.3d 468, 473 (10th Cir. 2002), *overruled in part by Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005).

[5] *See Exxon Mobil*, 544 U.S. at 292.

[6] *Id.* at 291–92.

3

The Tenth Circuit, however, has made clear that even where *Rooker–Feldman* is not otherwise applicable, "jurisdiction, even though properly obtained, may—and sometimes must—be declined under the principles of abstention."[7] And district courts in the Tenth Circuit have interpreted this guidance to mean that where related state court proceedings are still pending when a federal action is filed, but go final before the federal court rules, invocation of *Rooker–Feldman* may nonetheless be appropriate.[8] In *McDonald*, for example, a district court dismissed on the basis of *Rooker–Feldman* notwithstanding that the case was filed before related state proceedings went final, because the court concluded that "[w]ere the state court . . . proceedings involving Mr. McDonald ongoing, this Court would likely have concluded that the factors governing *Colorado River* abstention would have required this Court to stay (if not dismiss) Mr. McDonald's claims here pending the conclusion of the [state court] proceeding."[9] The court explained that "the practical effect of doing so would place the Court in an appropriate circumstance to now correctly invoke the *Rooker–Feldman* doctrine."[10]

Similar reasoning applies here. The decision whether to abstain under *Colorado River* turns on a balancing of four factors, only two of which are applicable here: (1) the desirability of avoiding piecemeal litigation, and (2) the order in which jurisdiction was obtained by the concurrent forums.[11] These factors would have counseled against asserting jurisdiction in this

---

[7] *D.A. Osguthorpe Family P'ship v. ASC Utah, Inc.*, 705 F.3d 1223, 1232 (10th Cir. 2013).

[8] *McDonald v. J.P. Morgan Chase Bank, N.A.*, No. 12-CV-02749-MSK, 2014 WL 334813, at *3 (D. Colo. Jan. 30, 2014).

[9] *Id.*

[10] *Id.* at *4.

[11] *See D.A. Osguthorpe Family P'ship.*, 705 F.3d at 1234. The other two factors are whether the state or federal court first assumed jurisdiction over the same res, and the inconvenience of the federal forum. The first factor is not relevant because "[n]either the state nor district court has acquired jurisdiction over property in the course of this litigation." *Id.* The second factor is not relevant because the state and federal courts are "at no great

4

case while state proceedings were still ongoing. Anderson's Consolidated Complaint relates primarily to proceedings and orders issued in the original Eviction Lawsuit and the second action filed in Third District Court. When this case was filed, the original Eviction Order had long since issued, the case had been up to the Utah Court of Appeals and back, and after the case had been sitting relatively dormant for six years, the Eighth District Court was addressing motions for a new trial, for entry of judgment, and for other relief.[12] Similarly, at that time, the second lawsuit had sat idle in the Third District Court for three years, and the court entered judgment four months after this case was filed.[13] The piecemeal federal review of any issues raised in these cases would be undesirable both because it would be duplicative of any ongoing state trial or appellate review and because it would raise federalism concerns. And as to the second factor, the state courts were the first to obtain jurisdiction over the eviction issue. Had this court been called on at that time to review proceedings in the Eighth and Third District courts, abstention (and a stay or dismissal) would have been required under *Colorado River*. That would place the court in a position now to appropriately invoke *Rooker–Feldman*.

Thus, the fact that this case was filed before all of Anderson's state court proceedings went final does not save the Consolidated Complaint from dismissal for lack of jurisdiction. Until the point at which the state proceedings went final, abstention would have been proper. And now that the state proceedings have gone final, the case presents exactly the situation *Rooker–Feldman* seeks to avoid: Anderson's Consolidated Complaint, like the complaints and lawsuits that preceded it, asks not that this court address a legal issue in parallel with the state

---

geographical distance from each other, and no party has suggested any physical or logistical inconvenience suffered as a result of litigating in dual forums." *Id.*

[12] Dkt. 86-2.

[13] Dkt. 86-7.

5

court—a request, as discussed above, that is not necessarily improper—but instead asks that this court sit in review of a state court Eviction Order and various state court orders addressing the Eviction Order. This court is without jurisdiction to do so, and the Consolidated Complaint was therefore properly dismissed for lack of jurisdiction.

Anderson's other objection to Judge Pead's invocation of *Rooker–Feldman* is his argument that *Rooker–Feldman* does not apply to allegations of misrepresentations in state court proceedings. In essence, this is an argument that Anderson's current claims were not actually raised before the state court and are not "inextricably intertwined" with those proceedings, as they relate only to perceived procedural improprieties with those proceedings. For support, Anderson relies on *Wagner*, in which the Tenth Circuit concluded that claims related to misrepresentations by defendants in a child custody proceeding that was ultimately dismissed were "sufficiently extricable from any state-court judgment for *Rooker–Feldman* purposes."[14]

In *Wagner*, the Tenth Circuit laid out the following test for invoking *Rooker–Feldman*: Would the federal claims be identical had there been no adverse state court judgment?[15] If so, the claims are extricable from any state court orders and *Rooker–Feldman* is not applicable. If not, *Rooker–Feldman* bars jurisdiction over those claims.

The claims in Anderson's Consolidated Complaint would not exist but for the adverse state court order. These claims concern arguments regarding state court judges' handling of Anderson's claims in state court, including allegations that the court violated Anderson's constitutional rights by unreasonably seizing his home, by allowing opposing counsel to misrepresent the law, by holding an evidentiary hearing on a motion to dismiss, by allowing

---

[14] *See PJ ex rel. Jensen v. Wagner*, 603 F.3d 1182, 1194 (10th Cir. 2010).
[15] *Id.* at 1193.

opposing counsel to draft findings of fact and conclusions of law, and by not allowing Anderson to file an answer and counterclaim, among others. These claims are all aimed at a central premise: that the state court failed to fulfil its duties and/or conspired with opposing parties and counsel to evict Anderson from a home he believes was rightfully his. This premise may in fact be true; that is a matter for the state appellate courts, and, if appropriate, the United States Supreme Court, which has exclusive jurisdiction over appeals from state supreme courts.[16] Regardless, these claims would not exist but for the state court judgments and Eviction Order, much less "be identical" absent those proceedings. For that reason, this court is without jurisdiction to review them, and Judge Pead properly dismissed the Consolidated Complaint.

## Other Bases for Dismissal

Judge Pead also enumerated several alternative bases for dismissal. The court will briefly address Anderson's objections to each. First, of the seventeen Defendants named in the Consolidated Complaint, eleven are what Judge Pead termed "Private-Party Defendants"—that is, Defendants who were not sued in their official capacity and who are not judicial bodies. Judge Pead recommended granting the Private-Party Defendants' Motion to Dismiss Anderson's federal claims (all of which are constitutional) on the basis that the Private-Party Defendants are not state actors, a prerequisite for constitutional claims under 42 U.S.C. § 1983 and the Fourteenth Amendment.[17] Anderson objected, contending the Private-Party Defendants are state actors as a matter of law because "Defendants made more than thirty misrepresentations in a six-page memorandum, convinced the Eighth District Court judge to hold an evidentiary hearing at

---

[16] 28 U.S.C. § 1257.

[17] The "under color of law" requirement under § 1983 and the "state action" requirement under the Fourteenth Amendment are identical. *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 929 (1982).

7

the motion to dismiss stage of the proceedings, and wrote the 'Statement of Facts and Conclusions of law.'"[18] The court disagrees. As demonstrated by Judge Pead's Report and Recommendation, the practice of asking counsel to draft orders for the court's adoption is not unusual, and does not render counsel a state actor. Nor does the fact that a party convinces a court to rule in a particular manner, even if done through misrepresentation. The authority Anderson cites is not to the contrary.

Judge Pead also alternatively granted the Private-Party Defendants' Motion to Dismiss claims against the Private-Party *Attorney* Defendants under the judicial proceedings privilege, which insulates attorneys from claims stemming from statements made in judicial proceedings.[19] In his Objection, Anderson contends he alleged the Private Party Attorney Defendants committed fraud and therefore exceeded the scope of their representation, in which case the judicial proceedings privilege would not apply.[20] Judge Pead dismissed this argument, concluding that Anderson nowhere alleges the Private-Party Attorney Defendants exceeded the scope of their representation. This court agrees. Anderson's Consolidated Complaint alleges that the Private-Party Attorneys and their clients defrauded Anderson out of his home, and committed fraud by misrepresenting the law to the court. This is not an allegation that the attorneys "engaged in independent acts, that is to say acts outside the scope of [their] representation of [their] client's interests, or [have] acted solely for [their] own interests and not [their] clients."[21] As such, Judge Pead properly determined the judicial proceedings privilege applies.

---

[18] Dkt. 98 at 6.

[19] *See Moss v. Parr Waddoups Brown Gee & Loveless*, 285 P.3d 1157, 1165 (Utah 2012).

[20] *See* Dkt. 98 at 14; *Moss*, 285 P.3d at 1166 ("[W]here an attorney has committed fraud or otherwise acted in bad faith, which is inherently 'acting in a manner foreign to his duties as an attorney,' the privilege will not shield an attorney from civil liability.").

[21] *See, e.g.*, *Moss*, 285 P.3d at 1166–68.

Judge Pead next granted the Motion to Dismiss all claims against the Private-Party Defendants arising prior to April 5, 2012 as barred by the statute of limitations. In Anderson's Objection, he contends the Eviction Order is void and therefore not subject to a statute of limitations. Judge Pead correctly determined, however, that Anderson's allegations that the Order is wrong (whether because it was influenced by misrepresentations or otherwise) does not render it void. Anderson also argues for the first time in his Objection that Utah's Savings Statute excuses any late filings. But Anderson has not demonstrated the Statute applies, as he has not shown, as required by the statute, that a timely-filed action was either reversed or dismissed other than on the merits, or that the present action was filed within one year of the reversal or dismissal.[22]

Judge Pead next concluded the State Court Defendants[23] were entitled to Eleventh Amendment Immunity. Anderson objected based on his purported ability to sue a state official in an official capacity for prospective relief—what is known at the *Ex parte Young* exception to Eleventh Amendment immunity. Judge Pead concluded, however, that the State *Court* Defendants are immune under the Eleventh Amendment, not that the *Individual* State Defendants are, and he correctly determined that the *Ex parte Young* exception "has no application in suits against States and their agencies, which are barred regardless of the relief sought."[24]

---

[22] *See* Utah Code § 78B-2-111. Additionally, the only authority on which Anderson relies is *Hebertson v. Bank One, Utah, N.A.*, 995 P.2d 7, 10 (Utah Ct. App. 1999), but that case was superseded by statute. *See Norton v. Hess*, 374 P.3d 49, 52 (Utah Ct. App. 2016) (recognizing that the Savings Statute now has a single use limitation and no longer permits "serial recourse" to the statute).

[23] In addition to suing Private Party Defendants, Anderson named various State Party Defendants that can be separated into two groups: the "State Court Defendants" (the Third District Court, the Eighth District Court, and the Utah Court of Appeals) and the "Individual State Defendants" (Gary Herbert, Sean Reyes, and Clark McClellan).

[24] *Buchwald v. Univ. of N.M. Sch. of Med.*, 159 F.3d 487, 495 (10th Cir. 1998).

Last, Judge Pead also variously concluded: the State Court Defendants are not "persons" for purposes of § 1983; Individual State Defendants Herbert and Reyes were not constitutionally required to conduct investigations of codefendant McClellan; Anderson's claim for injunctive and declaratory relief against Individual State Defendants Herbert and Reyes fails; Anderson's official capacity claims against McClellan fail because he did not act under color of state law; and various claims against the Individual State Defendants were untimely. Anderson does not meaningfully object to any of these conclusions,[25] and the court concludes none of them are clearly erroneous.

Anderson's Objection[26] to Judge Pead's Report and Recommendation[27] is OVERRULED. The Report and Recommendation is adopted in full, and the Private Party Defendants' Motion to Dismiss[28] and State Party Defendants' Motion to Dismiss[29] are GRANTED.[30]

The Clerk of Court is directed to close the case.

**SO ORDERED** this 6th day of November, 2017.

BY THE COURT:

_____
ROBERT J. SHELBY
United States District Judge

---

[25] *See* Dkt. 98 at 23–25.

[26] Dkt. 98.

[27] Dkt. 97.

[28] Dkt. 86.

[29] Dkt. 88.

[30] Anderson's Motion for the Court to Take Judicial Notice is denied. Dkt. 101. Anderson's supplemental authority and argument related to his statute of limitations argument is not proper material for judicial notice. Anderson's Motion for Partial Summary Judgment at Dkt. 103 is withdrawn (see Dkt. 107), and his Motion for Leave to File and related Motion for Partial Summary Judgment are denied because the Consolidated Complaint has been dismissed. Dkts. 105, 106.